UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| L.D., the Student, and C.K. and A.K., the Student's Parents/Guardians, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3:17-cv-01377 Chief Judge Crenshaw |
| SUMNER COUNTY SCHOOLS, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This is an action for judicial review under the Individuals With Disabilities Act ("IDEA"), 20 U.S.C. §§ 1400 et seq., brought by the parents of L.D., an eight year old boy with autism, against the Sumner County Schools ("SCS"). Now before the Court is a Motion to Dismiss (Doc. No. 16) filed by SCS.

### I. Factual Allegations

The allegations in the Complaint are as follows:

L.D. is a student in need of specialized instruction and is eligible to receive special education services under the IDEA. On March 30, 2017, Plaintiffs filed a due process complaint with the Tennessee Department of Education that challenged SCS's proposal to move L.D. into a therapeutic behavioral comprehensive development classroom ("TBCDC") at R. T. Fisher School. At the time, L.D. was in a Comprehensive Development Classroom ("CDC") at Watt Hardison Elementary School. As a result of the filing of the complaint, SCS was required to maintain L.D.'s "stay-put" placement at his present school throughout the duration of the due process hearing.

On June 23, 2017, SCS filed its own due process complaint seeking to eliminate the "stay-put" requirement. It also sought permission to place L.D. at the TBCDC school (which by

then had been relocated to Guild Elementary School) for forty-five days.

On July 31, 2017, a due process hearing was held before an Administrative Law Judge ("ALJ"). After the hearing, but prior to the hearing officer's decision, L.D. was accepted as a student at Illuminate Academy, a private, non-SCS school. Accordingly, on August 11, 2017, his parents withdrew L.D. from the SCS district. That same day, Plaintiffs filed a motion asking the ALJ to dismiss the pending due process complaint.

On August 18, 2017, the ALJ denied the Plaintiffs' Motion to Dismiss and issued a Final Order permitting SCS to alter L.D.'s placement to the TBCDC at Guild Elementary School for forty-five days. In doing so, the ALJ found that SCS had "proven by more than a preponderance of the evidence that maintaining L.D.'s current 'stay-put' placement is substantially likely to result in serious injury to L.D. or others." (Doc. No. 17-1 at 10). The ALJ then concluded:

> [I]t is **ORDERED** that SCS is relieved of its obligation to maintain L.D.'s current 'stay-put placement' at Watt Hardison Elementary School during the pendency of the companion due process hearing, . . . and that L.D.'s SCS placement be changed to the therapeutic behavioral CDC program at Guild Elementary School for forty-five school days. Under the circumstances, it is also **ORDERED** that L.D. shall not be required to enroll in school with SCS if he has secured a suitable private placement. The remaining issues will be resolved at the full hearing, which is currently set to begin November 3, 2017.

(Id. at 9-10).

By way of background for the ALJ's Final Order, Plaintiffs admit that, at some point while at Watt Hardison, "L.D. exhibited aggressive behaviors which resulted in injury to himself, his classmates, and teachers." (Doc. No. 1, Complaint ¶ 15). Nevertheless, they insist that L.D.'s placement in the CDC at Watt Hardison Elementary was appropriate. While there, he was under a behavior intervention plan that allowed him to have an individualized area in the classroom where he could receive one-on-one intervention, and "L.D. was able to be successful when he was given

2

appropriate direct instruction." (Id. ¶17). Even though "[t]he classroom staff did not consistently implement L.D.'s behavior plan," his teacher reported on February 10, 2017, that she was "incredibly proud of [L.D.'s] progress." (Id. ¶ 22).

Shortly after the progress report was issued, SCS claimed that "L.D.'s aggressive behavior began to increase in intensity." (Id. ¶ 23). L.D.'s case management team met, and it was determined that he would be sent to the TBCDC school. His parents were notified of this decision on March 29, 2017, and their due process complaint followed.

In this lawsuit, filed less than two months after the Final Order, Plaintiffs contend the ALJ erred in several ways. Specifically, they contend the "ALJ committed reversible errors of both law and fact, including, without limitation, determining" that (a) "L.D.'s withdrawal from SCS did not moot the due process complaint since the Complaint sought an injunction against a student not enrolled in the SCS school district"; (b) "SCS did all it reasonably could within the current 'stay-put' placement to reduce the risk of injury to L.D. and others"; and © "SCS demonstrated that the TBCDC program at Guild was an appropriate placement for L.D." (Doc. No. 1 Complaint at 5).

## II. Legal Discussion

The IDEA "offers federal funds to States in exchange for a commitment: to furnish a 'free appropriate public education'—more commonly known as a FAPE—to all children with certain physical or intellectual disabilities." Fry v. Napoleon Cmty. Sch., 137 S.Ct. 743, 748 (2017). An eligible child "acquires a 'substantive right' to such an education once a State accepts the IDEA's financial assistance," id. at 749, and "school districts receiving funds under the IDEA must establish an IEP [Individual Education Program] for each child with a disability," Knable ex rel. Knable v. Bexley City Sch. Dist., 238 F.3d 755, 762 (6th Cir. 2001)

Central to this case is the IDEA's "stay put" provision, which mandates that, "[d]uring the pendency of any proceedings conducted pursuant to [the IDEA], unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child[.]" See 20 U.S.C. § 1415(j). "The "stay-put" rule is a two-edged sword, however. While it protects students against unwanted removal from their classroom by schools, it does not protect against consequences of improvident unilateral removal by their parents." Eddins v. Excelsior Indep. Sch. Dist., 88 F. Supp. 2d 695, 701–02 (E.D. Tex. 2000) (citing Sch. Comm. of Burlington v. Dept. of Ed., 471 U.S. 359, 373)). Thus, for example, "parents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk." Sch. Comm. of Burlington, Mass. v. Dep't of Educ., 471 U.S. 359, 373–74 (1985).

Against this backdrop, SCS moves to dismiss on two ground. It argues that there is no live case or controversy for purposes of Article III, Section 2 of the United States Constitution because L.D. was removed from the SCS system. It also argues that, pursuant to Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), the Complaint fails to state a claim upon which relief can be granted as required by Rule 12b(6) of the Federal Rules of Civil Procedure. The Court considers the arguments in reverse order.

**A. Failure to State a Claim Under Rule 12(b)(6)**

In moving to dismiss for failure to state a claim, SCS argues that "Plaintiffs submitted a less than a bare bone complaint (about five pages in length) . . . without any sufficient factual allegations to support their claims for relief, and to request attorney's fees and costs." (Doc. No. 17 at 3). The Court finds the Complaint sufficient.

Although the Supreme Court in Iqbal and Towmbly "raised the bar for pleading requirements beyond the old 'no-set-of-facts' standard of Conley v. Gibson, 355 U.S. 41, (1957)," Courie v. Alcoa Wheel & Forged Prod., 577 F.3d 625, 629 (6th Cir. 2009), it "did not significantly alter notice pleading or impose heightened pleading requirements for all federal claims," Weisbarth v. Geauga Park Dist., 499 F.3d 538, 542 (6th Cir. 2007). Instead, notice pleading is alive and well; "Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." Skinner v. Switzer, 562 U.S. 521, 530 (2011). Thus, "under contemporary federal pleading standards, a complaint must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2), and 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Bandy v. Fifth Third Bank, 519 F. App'x 900, 902 (6th Cir. 2013) (citation omitted).

When the factual allegations in this case are accepted as true, they are more than sufficient to place SCS on notice of Plaintiffs' claims, and those allegations plausibly state a claim (assuming, of course, there exists a live dispute between the parties). Simply put, Plaintiffs allege that, not withstanding some bumps in the road, L.D. was performing well in the CDC setting and that the ALJ erred by (1) deciding the due process complaint after L.D. had been removed from the school system, and (2) determining the "stay put" provision should be rescinded. Besides, this is an appeal from an administrative proceeding under the IDEA, and any merit determination is based upon the administrative record, not the Complaint. In such circumstances, the court reviews the record "under a modified *de novo* standard, meaning that it may set aside administrative findings in an IDEA case 'only if the evidence before the court is more likely than not to preclude the

5

administrative decision from being justified based on the agency's presumed educational expertise, a fair estimate of the worth of the testimony, or both.'" N.W. ex rel. J.W. v. Boone Cty. Bd. of Educ., 763 F.3d 611, 614 (6th Cir. 2014) (quoting Bd. of Educ. of Fayette Cnty. v. L.M., 478 F.3d 307, 312–13 (6th Cir. 2007)). Dismissal for failure to state a claim is therefore unwarranted.

B. **Case or Controversy Under Article III**

"Article III of the Constitution confines the judicial power of federal courts to deciding actual 'Cases' or 'Controversies.'" Hollingsworth v. Perry, 133 S. Ct. 2652, 2661 (2013). "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341 (2006). In the absence of a live dispute under Article III, dismissal for lack of jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure is appropriate. Lyshe v. Levy, 854 F.3d 855, 857 (6th Cir. 2017); KNC Investments, LLC v. Lane's End Stallions, Inc., 579 F. App'x 381, 383 (6th Cir. 2014).

The Supreme Court has "repeatedly held that an 'actual controversy' must exist not only 'at the time the complaint is filed,' but through 'all stages' of the litigation." Already, LLC v. Nike, Inc., 568 U.S. 85, 90-91 (2013) (quoting Alvarez v. Smith, 558 U.S. 87, 92 (2009). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" Id. at 91 (quoting Murphy v. Hunt, 455 U.S. 478, 481 (1982)). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" Id. (quoting Alvarez, 588 U.S. at 93).

Plaintiffs argue that their voluntary withdrawal of L.D. from the SCS system mooted the

6

administrative proceedings rendering the ALJ's decision a nullity. They also argue that their present Complaint is not moot and that the ALJ erred in removing the "stay put" requirement. Plaintiffs cannot have it both ways.

The IDEA permits any party that is dissatisfied with the outcome of the due process hearing to bring suit in state or federal court. 20 U.S.C. § 1415(i)(2). However, "that right of action is carefully circumscribed. As a condition precedent to its exercise, an aggrieved party must satisfy the IDEA's exhaustion provision, § 1415(l), except when exhaustion would be futile or inadequate." M.P. ex rel. K. v. Indep. Sch. Dist. No. 721, 326 F.3d 975, 980 (8th Cir. 2003) (citing Honig v. Doe, 484 U.S. 305, 327 (1988)). Under the IDEA, a claim is exhausted upon the issuance of "a 'final' decision of either an impartial due process hearing officer, if the state does not have an appeals process, or the state educational agency, if it does." Coleman v. Newburgh Enlarged City Sch. Dist., 503 F.3d 198, 203 (2d Cir. 2007) (citing in 20 U.S.C. § 1415(i)(2)(A)); see D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 35 (1st Cir. 2012) (noting that, upon the exhaustion of administrative remedies, "[e]ither side may then appeal from the hearing officer's final decision to either a federal or state court of competent jurisdiction"); Klein Indep. Sch. Dist. v. Hovem, 690 F.3d 390, 395 (5th Cir. 2012) ("After parents have exhausted the available administrative procedures, any involved party aggrieved by the final decision of the state education agency that conducted the hearing may bring a civil action with respect to the complaint presented pursuant to this section in state or federal court.").

Here, Plaintiffs sought to circumvent the exhaustion requirement by withdrawing L.D. from SCS, and requesting that the ALJ not enter a decision. In so doing, they effectively abandoned their due process complaint, rendering their present claims moot, even if their intent was to avoid an

7

adverse determination. See Bd. of Educ. of Oak Park & River Forest High Sch. Dist. 200 v. Illinois State Bd. of Educ., 79 F.3d 654, 659 (7th Cir. 1996) (observing that "[a] desire for a favorable precedent will not prevent a case from becoming moot"); Eddins v. Excelsior Indep. Sch. Dist., 88 F. Supp. 2d 695, 702 (E.D. Tex. 2000) (noting that "abandonment of a claim renders it moot," and stating that some claims are mooted when an IDEA student it voluntarily withdrawn from the school district).

Even though the ALJ provided that L.D.'s placement could be changed to the TBCDC program at Guild Elementary School for forty-five school days from August 18, 2017, and even though this did not occur because L.D. enrolled in a private school, Plaintiffs' "fear that the ALJ's order, if left to stand, would allow the Defendant to place L.D. at Guild if he re-enrolls in the school district while the associated due process complaints are pending." (Doc. No. 18 at 5). They invoke the "capable of repetition, yet evading review" exception to the mootness doctrine, and argue:

> Because L.D. is only 8 years old and special education eligibility may apply until his 22nd birthday, there exists a strong probability that he may return to the Defendant's school district before his eligibility for special education expires, Defendant's injunction of an unenrolled student "in hand makes their action of facility to provide appropriate supports for L.D. and then unilaterally changing his placement to a more restrictive environment an action that Plaintiffs could reasonably expect to occur again.

(Id.). Other than Weinstein v. Bradford, 423 U.S. 147 (1975), a prisoner case involving eligibility for parole that sets forth the general standards for the exception to mootness, Plaintiffs cite no cases to support their position.

"The rule that a claim does not become moot where it is capable of repetition, yet evades review, . . . applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality." City of Los

8

Angeles v. Lyons, 461 U.S. 95, 109 (1983) (citing Defun is v. Odegaard, 416 U.S. 312, 319 (1974)). It is limited to situations "where the following two circumstances [are] simultaneously present: ' (1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'" Spencer v. Kemna, 523 U.S. 1, 17 (1998) (citing Lewis v. Cont'l Bank Corp., 494 U.S. 472, 481 (1990)). "The party asserting the exception bears the burden of proof." Barry v. Lyon, 834 F.3d 706, 715 (6th Cir. 2016) (citing Lawrence v. Blackwell, 430 F.3d 368, 371 (6th Cir. 2005)).

In the context of an appeal from a decision under the IDEA or a matter involving an IEP, the first circumstance will almost always be present because of the amount of time it takes for a claim to wend its way through the administrative process and the courts. As the Supreme Court noted in Board of Education of Hendrick Hudson Central School District v. Rowley, 458 U.S. 176, 186 n.9 (1982), a case involving the Education of Handicap Act ("EHA"), 20 U.S.C. § 1401– the predecessor to the IDEA–"[j]udicial review invariably takes more than nine months to complete, not to mention the time consumed during the preceding state administrative hearings." That "reasoning has prompted a number of circuits to conclude that IEP disputes likely satisfy the first factor for avoiding mootness dismissals." Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ., 397 F.3d 77, 85 (2d Cir. 2005) (collecting cases).

The second circumstance is fact-driven. For example, in Hoenig, another EHA case, the Supreme Court found one student's challenge moot because he was by then 24 years old and no longer entitled to the protections and benefits of the EHA. Another student's challenge was not moot, however, because (1) he was still entitled to benefits under the EHA; (2) his "very inability

9

to conform his conduct to socially acceptable norms . . . render[ed] him "handicapped"; (3) "the record [wa]s replete with evidence that [he was] unable to govern his aggressive, impulsive behavior"; and (4) it was "certainly reasonable to expect, based on his prior history of behavioral problems, that he will again engage in classroom misconduct." Honig, 484 U.S. at 319-320. Even so, the Supreme Court made it a point to note that its "cases reveal that, for purposes of assessing the likelihood that state authorities will reinflict a given injury, we generally have been unwilling to assume that the party seeking relief will repeat the type of misconduct that would once again place him or her at risk of that injury." Id. at 319.

L.D.'s circumstances lie somewhere between those presented in Honig. On the one hand, he is an eight years old boy with autism, and therefore eligible for protection of the IDEA for many more years, if warranted. On the other hand, there is no suggestion that his "very inability to conform his conduct to socially acceptable norms" is his disability, nor do Plaintiffs suggest that L.D. is consistently unable to govern his aggressive and impulsive behavior. Quite the contrary, while the Complaint states that, even though L.D. "exhibited aggressive behaviors" that resulted in injury to himself and others, it also alleges that he "was able to be successful when he was given appropriate direct instructions." (Doc. No. 1, Complaint ¶¶ 15, 17).

The situation presented here is not unlike that presented in Brown v. Bartholomew Consol. Sch. Corp., 442 F.3d 588 (7th Cir. 2006). There, the parents of a young boy named Bobby were dissatisfied with an IEP proposed by the school district for the 2002-2003 school year and filed an administrative complaint. After the hearing officer entered an order in favor of the school district, and both the State Board of Special Education Appeals and the district court affirmed that decision, the parents enrolled Bobby, who was then nine years old, in a different school district and agreed

to a new IEP for the upcoming school year.

On appeal, the Seventh Circuit addressed the "capable of repetition yet evading review" prong of the mootness doctrine. Noting that the parents relied heavily on Honig, the court pointed out that, in Honig, "there was an inextricable link between the student's violent behavior and the challenged policy of exclusion." Id. at 599. The court then observed:

> Precisely because of the child's "inability to conform his conduct to socially acceptable norms," the Supreme Court was willing "to assume that the party seeking relief will repeat the type of misconduct that would once again place him or her at risk of injury." . . . Here, Bobby's autism presents an evolving set of challenges for educators, one that requires his IEP to be periodically revised. What was right for Bobby in kindergarten may not be the proper educational program when he enters the third grade. The dispute over the 2002–2003 IEP turned on whether Bobby was ready for full-time mainstream class. Now, as a nine-year old, Bobby's readiness for mainstream education presents a different question calling for reassessment of his educational development. Were we to decide, at this later date, whether mainstreaming was right for Bobby back in 2002–2003, we would be issuing, in effect, an advisory opinion. Our decision would merely tell the parties who was correct about Bobby's outdated IEP. It would do nothing to define the contours of the parties' continuing legal relationship under the IDEA such that future repetitions of the injury could be avoided. The case therefore must be dismissed as moot.

Id. at 599-600 (citation to Honig omitted).

Similarly in this case, L.D. is a young child who suffers from autism who was removed from the school district where his needs were allegedly not met. The fact that he has unilaterally changed schools does not, by itself, make the case moot, Hughes v. Dist. Sch. Bd. of Collier Cty., No. 206CV629FTM-29DNF, 2008 WL 4709325, at *6 (M.D. Fla. Sept. 22, 2008), particularly because his parents challenge to SCS's decision was made prior to the move. Indep. Sch. Dist. No. 284 v. A.C., 258 F.3d 769 (8th Cir.2001). What makes the case moot is any allegation or evidence from Plaintiffs that, if, and when, L.D. returns to an SCS school, he will be the same boy as when he left, as opposed to an autistic child who presents "an evolving set of challenges for educators[.]" Brown,

11

442 F.3d at 599. Logic dictates that L.D. will be different if and when he is readmitted and it would be pure speculation to say how.

Further, and more importantly, Plaintiffs' challenge is to the ALJ's Final Order that merely addressed the "stay-put" requirement. To the extent that Plaintiffs claim the ALJ procedurally erred by deciding the matter after being informed that L.D. had changed schools, this certainly is unlikely ever to repeat itself. Insofar as the ALJ is alleged to have substantively erred by relieving SCS of its obligation to maintain L.D.'s then-current placement, this, too, does not suggest a live case or controversy, or circumstances that are bound to recur. The only thing the ALJ has ruled thus far is that, during the pendency of the due process proceedings, SCS was authorized to place L.D. in the TBCDC program at Guild Elementary School for a period of forty-five school days. There is no suggestion that L.D. is likely to return to SCS prior to the completion of these proceedings, which the ALJ stated was to occur in November 2017 and Plaintiffs state in their briefing has now been scheduled for the first week in May 2018. (Doc. No. 18 at 4 n.2). Plaintiffs' fear that the ALJ's order would be followed or reimplemented at some unknown point down the road simply does not suffice to establish a case or controversy. See, Preiser v. Newkirk, 422 U.S. 395, 403 (1975) (observing that "subjective fear" that is "remote and speculative . . . hardly casts that 'continuing and brooding presence,'" which is necessary for a continuing case and controversy); Hange v. City of Mansfield, 257 F. App'x 887, 891 (6th Cir. 2007) ("stating that the "mere subjective fear that a plaintiff will be subjected again to an allegedly illegal action is not sufficient to confer standing").

### III. Conclusion

On the basis of the foregoing, SCS's Motion to Dismiss will be granted and this case will be dismissed pursuant to Rule 12(b)(3) for lack of a present case or controversy within the meaning

of Article III.

    An appropriate Order will enter.

                                              _____
                                              WAVERLY D. CRENSHAW, JR.
                                              CHIEF UNITED STATES DISTRICT JUDGE